UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  1:10-cv-23685-JAL

**THE PALM BAY YACHT CLUB**
**CONDOMINIUM ASSOCIATION, INC.,**

        Plaintiff,

v.

**QBE INSURANCE CORPORATION,**

        Defendant.

_____/

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE TESTIOMONY OF PLAINTIFF'S EXPERT WITNEES PAUL NORCIA, OR IN THE ALTERNATIVE, MOTION FOR _DAUBERT_ HEARING AND INCORPORATED MEMORANDUM OF LAW**

Defendant, QBE INSURANCE CORPORATION ("QBE"), hereby files its Motion in Limine to Preclude Testimony of Plaintiff's Expert, Paul Norcia, or in the alternative, Motion to Strike and/or Motion for Daubert Hearing, as follows:

1.    This matter arises out of a claim for Hurricane Wilma damage under the commercial property insurance policy number QF2047-10 which Defendant QBE INSURANCE CORPORATION (hereinafter "QBE") issued to Plaintiff PALM BAY YACHT CLUB CONDOMINIUM ASSOCIATION, INC. ("Palm Bay"), insuring Plaintiff's condominium building.

2.    On June 27, 2011, Palm Bay's Expert Witness Disclosures listed Paul Norcia ("Norcia") as one of its expert witnesses and stated:

> Mr. Norcia will offer expert opinions consistent with those set forth in his report and estimate produced contemporaneously with these disclosures, include the repair and replacement of portions of the PBYC Building ("insured building") various components and cost, as well as the actual cash value of the loss and damage to the insured building from Hurricane Wilma.  The estimate losses will include damages to: windows, doors; interior water damage; and roofing.  Mr.

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 2 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 2 of 10

> Norcia's general opinion is that the cost to repair and replace the hurricane damage to the subject building as well as the actual cash value of the hurricane damage exceed the QBE Policy's deductible of $804,400. Mr. Norcia's specific opinions are contained in his report. His opinions are based on, among other things, his background, training, and experience in the insurance industry, the opinions of Dr. Anurag Jain and Jeff Dobbins of TSSA Storm Safe, custom and practice in the insurance industry, his review of the QBE policy, his review of documents produced during discovery in this case, as well as his personal inspection and investigation of the insured building and its components and unit owner witness interviews. Mr. Norcia's qualifications are attached to his report.

[D.E. 34].

3. Mr. Norcia's role was to estimate the value of the damages associated with the hurricane. See deposition of Paul Norcia dated August 24, 2011 at p. 4, ln. 14-18, attached as **Exhibit "A"**.

4. His June 26, 2011 Estimate A[1] has a total cost to replace the property damage to the Palm Bay property of $8,562,183.26. This is broken down to include the following:

| | |
|---|---|
| Glass glazing and storefront windows | $   113,881.78 |
| Heat, Vent & Air Conditioning ("HVAC") | $   324,301.97 |
| Roofing | $   513,428.30 |
| Windows – Aluminum | $1,682,399.17 |
| Windows – Sliding Patio Doors | $1,733,641.64 |

5. Mr. Norcia's opinions go beyond estimating the cost to repair or replace and actually extends into determining the cause of alleged damage as well as whether a specific component of damage, in particular windows and sliding glass doors, can be repaired or needs to be replaced.

6. Mr. Norcia's opinions regarding causation and whether a component should be repaired or replaced fail to meet the basic requirements of Federal Rule of

---

[1] Mr. Norcia prepared two estimates; "A" excludes "matching" for undamaged items whereas "B" includes it.

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 3 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 3 of 10

Evidence 702 which governs expert testimony. Mr. Norcia is not qualified to testify competently regarding the matters he intends to address nor is the methodology by which he reaches his conclusions sufficiently reliable under Daubert[2].

7. QBE respectfully requests the Court preclude and/or limit Mr. Norcia's testimony as to causation and whether an item can be repaired or needs to be replaced. In the alternative, QBE requests a Daubert hearing be granted.

## MEMORANDUM OF LAW

### I. GENERAL RULES OF EXPERT TESTIMONY

"The district court has broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." Evans v. Mathis Funeral Home, 996 F.2d 266, 268 (11th Cir. Ga. 1993), citing Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S. Ct. 1119, 1122, 8 L. Ed. 2d 313 (1962); and Polston v. Boomershine Pontiac-GMC Truck, Inc., 952 F.2d 1304, 1309 (11th Cir.1992). "To warrant or permit the use of expert testimony, two conditions must be met: first, the subject matter must be closely related to a particular profession, business or science and not within the common knowledge of the average layman; second, the witness must have such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." Faircloth v. Lamb-Grays Harbor Co., 467 F.2d 685, 694 (5th Cir. 1972)(citations omitted).

> "While Rule 702 permits the trial court to admit expert testimony if it will 'assist the trier of fact' and thus somewhat broadens the range of admissibility, it by no means mandates admission of such testimony." United States v. Lopez, 543 F.2d 1156, 1158 (5th Cir. 1976). "Rule 702 compels the district court to perform the critical 'gatekeeping' function concerning the admissibility of expert evidence. This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards of admissibility under Rule 702. This objective is to ensure the reliability and relevance

---

[2] Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993).

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 4 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 4 of 10

of the expert testimony." United States v. Dean, 221 Fed. Appx. 849, 851 (11th Cir. Ga. 2007)(internal citations omitted).

When determining the admissibility of expert testimony under Rule 702, a court engages in a three-part inquiry. The court:

> must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. While there is inevitably some overlap among the basic requirements -- qualification, reliability, and helpfulness -- they remain distinct concepts and the courts must take care not to conflate them.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. Ga. 2004)(internal citations omitted). With regard to the reliability standard set forth in Rule 702, the United States Supreme Court held:

> The subject of an expert's testimony must be "scientific . . . knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds."

Daubert v. Merrell Dow Pharms., 509 U.S. 579, 590 (U.S. 1993). The Eleventh Circuit has held that the importance of Daubert's gatekeeping requirement cannot be overstated. In Frazier, the Court held:

> As the Supreme Court framed it in Kumho Tire: "the objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 5 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 5 of 10

Frazier, 387 F.3d at 1260, citing Kuhmo Tire 526 U.S. at 152.

### II. Mr. Norcia is not competent to testify whether a particular component of the building can be repaired or has to be replaced.

Mr. Norcia's testimony reveals that he does not have the requisite expertise to provide expert testimony regarding repair recommendations to windows, sliding glass doors, roof and/or the HVAC unit. Mr. Norcia testified that he is neither an air conditioner expert (Exh. "A" at p. 74, ln. 19-20) nor a licensed roofer (Exh. "A" at p. 72, ln. 24-25). Recently, Mr. Norcia testified in trial that:

> Q. You are not a window expert, per se, correct?
> A. Correct.
> Q. In fact, I believe you candidly testified earlier that you have no window installation or repair experience, right?
> A. Correct.

*Ocean View Towers Association, Inc. v. QBE Insurance Corporation*, Case 11-60447-CIV-SCOLA, January 5, 2012 trial transcript at p. 163, ln. 2-6, attached as **Exhibit "B"**. He further testified that "[he does not] know a lot about cooling towers…" Exh. "B" at p. 194, ln.15-22. Nor is he a licensed general contractor[3] and he has little to no personal experience with roofs and windows:

> Q. Do you have any experience in replacing windows in South Florida upon which you base your opinions…
> A. I've never replaced a window in South Florida personally.

Exh. "C" at p. 52, ln. 17-21[4]. Furthermore, Mr. Norcia is not a licensed public adjuster in Florida. Exh. "C" at 73, ln. 13-15.

Mr. Norcia's replacement cost estimate centers on his determination of the need to replace certain windows, sliding glass doors, fixed windows, roofing and HVAC. [D.E. 34]. In fact, he opines that every single window and sliding glass door damaged must be *replaced* and none can be *repaired*. Mr. Norcia admittedly does not have personal experience or qualifications in window repair, design or installation. He

---

[3] See Mr. Norcia's deposition dated August 23, 2011 at p. 28, ln 17-18, attached as **Exhibit "C"**.
[4] See also Mr. Norcia's deposition dated January 3, 2012 at p. 77, ln. 9-11, attached as **Exhibit "D"**.

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 6 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 6 of 10

therefore lacks the competency to offer expert opinions as to whether a window, sliding glass door or fixed window can be repaired or must be replaced.

Notably, while Mr. Norcia's estimates provide that certain windows and doors within the condominium must be completely replaced, Mr. Norcia admits that he did not actually make that specific determination for any unit:

> Q. Did you come to any conclusions on your own about whether or not the windows could be replaced – I mean repaired as opposed to replaced?
> A. On my own?
> Q. Yes.
> A. I – no, not on my own.

Exh. "A" at p. 46, ln. 6-11.  Instead, Mr. Norcia states that he relied on TSSA Storm Safe's ("TSSA") suggestion that all the windows had to be replaced.  Exh. "A" at p. 45, 11-25 and p. 46, ln. 1-5.  However, TSSA did not opine as to whether any windows required replacement instead of repairs:

> Q. Well, you're only looking for the condition, the various conditions that you observed.  Correct?
> A. Correct.
> \* \* \*
> Q. You do not determine causation of a condition?
> A. Correct.

Deposition of Jeff Dobbins dated September 19, 2011 at p. 32, ln. 5-7, 21-22, attached as **Exhibit "E"**.  As noted, Mr. Norcia's estimate required full replacement of all windows included; however, when asked to explain why they could not be repaired or comment on what components were damaged such that full replacement was necessary, he testified that he could not tell from looking at his notes.  Exh. "A" at p. 48, ln 5-8.  Furthermore, Mr. Norcia purportedly relies on glass bids from Continental Glass and Northern Reconstruction Services to arrive at the figures in his estimate.  Exh. "A" at p. 18, ln. 8-10.  However, he never questioned these contractors about whether or not replacement parts could be obtained in order to support his expert opinion that complete window replacement is required.  Exh. "A" at p. 18, ln. 15-19.  Accordingly, Mr. Norcia has no basis for his opinion that every damaged window at Palm Bay must be replaced as a result of Hurricane Wilma.

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 7 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 7 of 10

With regard to his opinion that the roof requires full replacement, Mr. Norcia again testified that he relied on other experts' opinions and figures. Specifically, he advised that he relied upon Mr. Swaysland's report/replacement protocol, Certified Roofing Specialists and American Caribbean Testing. Exh. "A" at p. 12, ln. 17-21; p. 15, ln. 21-25; and p. 16, ln. 1-15. But none of those reports state the roof requires complete replacement. Further, Mr. Norcia testified that he did not take any notes regarding the damages he observed to the roof and did not conduct a core sample to support his opinions. Exh. "A" at p. 71, ln. 16-18 and p. 72, ln. 8-10.

With regard to his opinion as to cost, Mr. Norcia testified the price he used for the roof came from Certified Roofing Specialists. Inexplicably, however, his estimate exceeds that proposal's number. In attempting to explain the increase, Mr. Norcia replied that he relied on an "in-house [accounting] document" for the damages, but that document has never been produced. Exh. "A" at p. 26, ln. 7-18.

Similarly, Mr. Norcia also fails to support his expert opinion regarding the determination that the air handlers in the HVAC section of the estimate were not repairable:

> Q. Who made the determination that the air handlers were not repairable?
> A. Both myself and Cool Breeze.
> Q. And how did you make that determination?
> A. Again, based – based on comments from Cool Breeze. Based on comments of the Association.

Exh. "A" at p. 74, ln. 9-14. While Mr. Norcia deferred to Cool Breeze in order to opine that full replacement of the HVAC was necessary, he has no basis for same as he acknowledged Cool Breeze recommended full replacement, not because of storm damage, but because "it would not be cost effective to…try to effect repairs to these units." Exh. "A" at p. 74, ln. 21-25 and p. 75, ln. 1-6.

The above testimony clearly reflects that Mr. Norcia is not qualified to render an opinion as to what needs to be repaired or replaced. Furthermore, he did not invoke proper, reliable methodologies in reaching his opinions in compliance with the Rules of Evidence or federal law. Under <u>Frazier</u>, Mr. Norcia did not engage in the type of "intellectual rigor" that characterizes the practice of an expert in the relevant field. As

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 8 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 8 of 10

such, his testimony regarding causation and whether or not purportedly damaged items require replacement, should be precluded.

### III. Mr. Norcia is not qualified nor is there competent evidence for him to rely on to render an opinion as to causation of the damages.

Mr. Norcia's estimates comprise his opinions. He has prepared two estimates, one containing replacement and actual cost values with regard to matching and the other without regard to matching. However, rather than limiting his opinions to cost, he attempts to opine as to causation of damages as well. Mr. Norcia testified:

> Q. Have you ever been qualified to provide an expert opinion as to the causation of roof damage in any court?
> A. No.

Exh. "A" at p. 71, ln. 16-18. In this matter he testified that his opinion that the windows and sliding glass doors were damaged by Hurricane Wilma (i.e. causation) is based on TSSA. Exh. "A" at p. 45, 11-25, p. 46, ln. 1-5. However, TSSA did not perform an investigation into causation. Mr. Dobbins of TSSA testified:

> Q. Well, you're only looking for the condition, the various conditions that you observed. Correct?
> A. Correct.
>        *  *  *
> Q. You do not determine causation of a condition?
> A. Correct.

Exh. "E" at p. 32, ln. 5-7, 21-22. Accordingly, Mr. Norcia's opinions on windows and sliding glass doors as to what was, or was not, damaged by the hurricane are based on conjecture, not competent evidence. Therefore, his estimate is completely arbitrary as he is not personally qualified to testify regarding the cause of purported damage and the testimony of those upon whom he relied refutes his basic assumptions.

### IV. Should the Court require additional information from the witness, a <u>Daubert</u> style hearing is appropriate and should be ordered.

QBE acknowledges that a district court has discretion in whether to conduct a <u>Daubert</u> style hearing or make a decision based upon the written record before the court. <u>United States v. Robertson</u> 387 F. 3d. 702 (8th Cir. 2004) and <u>Kerrigan v. ABB Power T&D Co.</u> 267 F. Supp. 2d 703 (E.D. Mich 2003). Should the Court find that the

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 9 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
**Page 9 of 10**

record does not clearly indicate Mr. Norcia's opinions and bases for same, or lack thereof, QBE would respectfully request that an evidentiary hearing be conducted wherein the Court and counsel can examine Mr. Norcia regarding the matters challenged herein.

### V. Conclusion and Relief

Mr. Norcia's opinions are based not on his own expertise, but rather on the purported expertise of others. His methodology is unreliable, he has no basis for the scope of damage presented in his estimates, and no personal knowledge which supports his determination of what items should be repaired and/or replaced. Accordingly, he should be precluded from presenting opinion testimony regarding causation and the extent of damage to the items listed in his estimates. In the alternative, QBE respectfully requests a <u>Daubert</u> hearing on the admissibility of his testimony.

WHEREFORE Defendant QBE INSURANCE CORPORATION respectfully requests this Honorable Court enter an Order Limiting Paul Norcia's testimony as stated herein, or alternatively order a <u>Daubert</u> hearing, and grant such further relief as this Court deems just and proper.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Defendant hereby certifies that it has complied with Local Rule 7.1(A)(3) by consulting with Plaintiff's counsel via telephone. Plaintiff's counsel stated he opposes the relief sought herein.

### CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**/s/ Evelyn M. Merchant**
Evelyn M. Merchant

Case 1:10-cv-23685-JAL   Document 58   Entered on FLSD Docket 01/19/2012   Page 10 of 10

*The Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp*
Case No.: 1:10-cv-23685-JAL
Page 10 of 10

## SERVICE LIST

Erwin A. Acle, Esq.
eacle@childresslawyers.com
Christina M. Phillips, Esq.
cphillips@childresslawyers.com
Childress Duffy Goldblatt, Ltd.
12000 Biscayne Blvd., Ste. 415
Miami, Florida 33181
Tel: 305.895.9050
Fax: 305.895.9589
Counsel for Plaintiff (PHV)

C. Deborah Bain, Esq.
dbainlaw@aol.com
C. Deborah Bain, P.A.
840 U.S. Highway One
Suite 305 - The Summit Bldg.
N. Palm Beach, FL 33408
Tel.: 561-630-1917
Fax: 561-630-1918
Co-Counsel for QBE Ins. Corporation

Christopher N. Mammel, Esq.
cmammel@childresslawyers.com
Victor J. Jacobellis, Esq.
vjacobellis@childresslawyers.com
Childress Duffy Goldblatt, Ltd.
500 North Dearborn Street
Suite 1200
Chicago, IL 60654
Tel: 312.494.0200
Counsel for Plaintiff