# Norcia Insurance Consultants, LLC

### EXPERT REPORT OF PAUL NORCIA
### DATED JUNE 26, 2011

This will serve as my expert report regarding the wind and water damage loss for The Palm Bay Yacht Condominium Association, Inc. at 780 NE 69th Street Miami, FL 33138 resulting from Hurricane Wilma ("the property damage loss").

I. <u>Summary of Opinions</u>

The following are my opinions regarding the property damage loss. The basis and reasons for these opinions, the data, and other information that I considered in forming these opinions, are identified in Section IV of this report.

A. Exhibit A to my report is my estimate as to the cost to repair and/or replace the property damage loss.

B. It is my opinion that the cost to repair and/or replace the property damage loss is $8,562,183.26.

C. It is my opinion that my estimate accurately reflects the work that is reasonable and necessary to repair and/or replace the property damage loss.

D. It is my opinion that my estimate accurately reflects the pricing that would be used to perform the repair and/or replacement of the property damage loss.

E. This estimate includes an amount for general contractor overhead and profit at 10% for overhead and 10% for profit. In the insurance industry, general contractor overhead and profit is a component of repair/replacement cost where, as here, it is reasonably likely that a general contractor would be needed to repair / replace the property damage loss.

F. Actual cash value is generally defined in the insurance industry as the cost to repair /replace property less a deduction for physical depreciation. Physical depreciation is generally understood in the insurance industry to mean actual deterioration of items of routine maintenance that are subject to replacement at intervals over the life expectancy of the building. Except for the intrinsic labor costs that are included in the cost of manufactured materials or goods, the expense of labor necessary to repair, rebuild or replace covered property is not a component of physical depreciation and should not be subject to depreciation or betterment.

18183 Lansford Path ●Lakeville, MN 55044-4956
Office (952) 892-7831          Fax (952) 892-7835

EXHIBIT

C

G. It is my opinion that the appropriate physical depreciation to be applied in this case for the property damage loss is $1,057,157.08. The replacement of items subject to depreciation would be roof, windows, doors, door hardware, interior paint, stucco or concrete replacement, and any drywall being replaced in full. The insurance carrier adjuster submitted an estimate that only included items that had actually been incurred and has taken no depreciation on such items. I agree that no depreciation would be taken on any incurred expenses and as such we have taken no depreciation on the roof.

H. It is my opinion that actual cash value of the property damage loss is $7,505,026.18 as set forth in the estimate attached as Exhibit A to my report.

I. The insurance policy, in particular Form CP 00 17 (Ed. 04 02) (page 11 of 14) provides that the insurer will determine the value of glass in the event of loss or damage at the cost of replacement with safety glazing material if required by law. Miami is in Dade County and Dade County is designated as being in a high velocity wind zone which mandates the replacement of windows and doors with impact rated windows and doors.

J. This estimate includes the cost to replace all damaged windows with the required safety glazing material.

K. This estimate includes cost to repair actual observed damages and does not consider matching and uniformity of items being repaired (i.e. windows, doors, balcony railings, etc.). In the insurance industry, the indemnity principle of a replacement cost policy allows an insured to recover the cost of matching undamaged building materials, where, as here, these building materials will not match the new building materials used for replacing the physically damaged portions of the units or buildings. If matching is considered, then the property damage loss at replacement cost would be $9,962,264.51 and the actual cash value property damage loss would be $8,602,173.47 as set forth in the estimate attached as Exhibit B to my report.

II. _Qualifications_

I have approximately 26 years of experience in the insurance industry as a claims adjuster. From 1985 to 2007, I worked as a property insurance adjuster and claims examiner for both independent adjustment firms as well as an insurance company. Since 2007, I have worked as a licensed public insurance adjuster. I have previously held independent adjusters licenses in Florida and Minnesota and currently hold a public adjusters license in Minnesota (License No: 40026085). My National Insurance Producer Registry (NIPR) number is 3583717. The NIPR

links state insurance departments with the entities they regulate. During the course of my 26 years working in the insurance industry, I have investigated, adjusted, supervised or managed thousands of insurance claims. I have worked large hurricane claims such as but not limited to Hurricane Gloria, Andrew, Hugo, Frances, Jeanne, Charlie, Ivan, Ike, Katrina and Wilma. I have also served as an appraiser and umpire in more than 400 insurance claim disputes. My qualifications are summarized in my resume attached as Exhibit C. A list of testimony and depositions I have given in the past four years is attached in Exhibit D.

III.   <u>Compensation</u>

While I have no written contract I am typically reimbursed on a percentage basis of the net recovery after expenses pursuant to the written agreement that Dietz International has with the insured.  This compensation is typically no more than 1½ % of the net recovery.  I am typically compensated at $165.00/ per hour for time spent providing my expert depositions and $225.00/ per hour for time spent providing expert trial testimony. I am self employed as a sole proprietor of Norcia Insurance Consultants.

IV.   <u>Basis for Opinions and Methodology, Data and Other Information Considered.</u>

The basis for my opinions includes my background, training and 26 years of experience in the property insurance industry as an insurance adjuster, property insurance industry customs and practices, as well as the following:

A. My site inspection of all of the exterior structure and interior of what were 226 of 237 units that I gained access to.

B. I have consulted with and reviewed the expert report of TSSA Storm Safe**,** Inc. It is reasonable and customary in the property insurance claims industry  to consider and rely upon glazing expert reports, opinions and recommendations as to the nature, scope and repairability  of wind and water damages in preparing estimates of the cost to repair and  to replace such damages.

C. I consulted with and reviewed the expert report of Dr. Anarug Jain of Weidlinger Associates, Inc. It is reasonable and customary in the property insurance claims industry to consider and rely upon structural engineer expert reports, opinions and recommendations as to the nature, scope and repairability of wind and water damages in preparing estimates of the cost to repair and replace such damages.

D. I have reviewed the Proposal and Contract Agreement along with additional records from Certified Roofing Specialists who had completed replacement of various roofs following this property damage loss. It is reasonable and customary in the property insurance claims industry to consider and rely upon roofing

contractors as to the nature, scope and repairability of wind and water damages in preparing estimates of the cost to repair and replace such damages.

E.  I have reviewed the expert report dated February 3, 2006 as well as the Reroofing Specifications dated May 4, 2006 along with additional records from Swaysland Professional Engineering Consultants, Inc. It is reasonable and customary in the property insurance claims industry to consider and rely upon structural engineer expert reports, opinions and recommendations as to the nature, scope and repair ability of wind and water damages in preparing estimates of the cost to repair and replace such roof damages. Based on the findings and recommendations of this expert report, the roof was replaced.

F.  I have reviewed the report Atlantic Caribbean Roof Consulting who conducted a complete analysis and survey of the roof this property in November 2005. It is reasonable and customary in the property insurance claims industry to consider and rely upon roofing consultants as to the nature, scope and repair ability of wind and water damages in preparing estimates of the cost to repair and replace such roof damages. Based on the findings and recommendations of this survey by this expert, the roof was replaced.

G.  I have consulted with Continental Glass Systems, Carolina Metal Products, Inc. and SSMF Inc. in securing unit cost pricing for aluminum window units and sliding glass doors affected by the property damage loss. It is reasonable and customary in the property insurance claims industry to consider and rely upon building envelope design and construction as to the nature, scope and repairability of wind and water damages in preparing estimates of the cost to repair and replace such damages.

H.  I have consulted with Ray Sentenat of Cool Breeze Air Conditioning Corp. Cool Breeze is well recognized  HVAC company and is familiar with damages sustained to Mechanical components to this property following the effects of the property damage loss. It is reasonable and customary in the property insurance claims industry to consider and rely upon mechanical and air conditioning contractors as to the nature, scope and repairability of wind and water damages in preparing estimates of the cost to repair and replace such damage.

I.  I have consulted with Alan Moser of Phoenix Concrete Restoration who has performed concrete and balcony restoration to this property after the property damage loss. It is reasonable and customary in the property insurance industry to consider and rely upon exterior building envelope design and construction as to the nature of not only completed repairs but also as to the nature, scope and

repairability of wind and water damages in preparing estimates of the cost to repair and to replace such exterior items.

J. I have consulted with Tad Balzer of Northern Reconstruction Services and R. Michael Sorrell of Hurricane Management Group, LLC in review of the scope of damages that is the subject of this repair / replacement proposal. It is reasonable and customary in the property insurance claims industry to consider and rely upon local general contractors as to the nature, scope, pricing and repair ability of wind and water damages in preparing estimates of the cost to repair and replace such damage.

K. I have utilized a combination of Xactimate pricing, local sub contractor pricing as well as my own historical cost analysis of reasonable and customary pricing for the repair and replacement needed to remedy the property damage loss. Xactimate is a software program for estimating the cost of repairs and reconstruction for residential and commercial structures. Xactimate publishes structural repair and cleaning price lists for 460 separate economical and geographical areas and releases updates at least once per quarter. Each structural repair and cleaning database contains more than 10,000 unit cost line items. For each line item Xactimate provides labor costs, labor productivity rules, labor burdens and overhead, material costs and equipment costs. Eighty percent of insurance-repair contractors and 18 of the top 20 — including 9 of the top 10 (based on A.M Best) — property insurers use Xactimate to calculate the cost of repairs.

L. I have reviewed documents from and consulted with Scott Stewart, the property manager, and Barry Levinson, a board member, of The Palm Bay Yacht Club as well as speaking directly to many of the unit owners and residents as to what damages were caused by Hurricane Wilma.

M. I have reviewed aerial roof and bird's eye photos of the insured premises produced by Connect Point.

N. I have reviewed the partial architectural plans for this building.

O. I have reviewed, analyzed and applied the terms of the insurance policy issued by QBE covering the building at the insured premises for the policy period for within which the loss occurred.

P. I have reviewed and analyzed documents produced during the discovery phase of this litigation, including documents produced by QBE.

Paul Norcia
Norcia Insurance Consultants

June 26, 2011

18183 Lansford Path ●Lakeville, MN 55044-4956
Office (952) 892-7831                    Fax (952) 892-7835

PBYCED000006